UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VEANA SHACKELTON,

                              Plaintiff,

           v.                                        1:04-CV-1353
                                                            (C.J. Mordue)

COMMISSIONER OF SOCIAL
SECURITY,

                              Defendant.
_____

APPEARANCES:                           OF COUNSEL:

PETER M. MARGOLIUS, ESQ.
Attorney for Plaintiff

GLENN T. SUDDABY                WILLIAM H. PEASE
United States Attorney for the        Assistant U.S. Attorney
 Northern District of New York
Attorney for Defendant

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income benefits (SSI) on February 13, 2001 (Administrative Transcript ("T") at 69). The application was denied initially. (T. 23-26).

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") but plaintiff failed to appear for the hearing, and the ALJ issued a decision, dismissing plaintiff's request for hearing and reinstating the initial denial. (T. 27, 44-46). Plaintiff's counsel wrote to the Appeals Council stating that plaintiff failed to appear due to her incarceration at the time of her scheduled hearing and argued that plaintiff did *not* intend to abandon her claim. (T. 48-49).

The Appeals Council remanded the matter to an ALJ for a hearing which was held on November 14, 2003. (T. 453-96). The ALJ found that the plaintiff was not disabled. (T. 13-22). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on October 25, 2004. (T. 3-5).

## CONTENTIONS

The plaintiff makes the following claims:

(1) A letter-brief by counsel for plaintiff which was submitted to the Appeals Council was not considered by the Appeals Council. (Plaintiff's Brief, p. 4).

(2) The ALJ missed the diagnosis of Bipolar Disorder. (Plaintiff's Brief, p. 4).

(3) The ALJ failed to take into consideration an assessment of plaintiff's mental capacity signed by a psychiatrist at Columbia County Mental Health Center. (Plaintiff's Brief, p. 4).

The defendant argues that the Commissioner's determination is supported by substantial evidence in the record and must be affirmed.

## FACTS

Plaintiff was 32 years old when she applied for SSI benefits during February of 2001. (T. 69).  She alleges disability beginning October 18, 1994, based upon Hepatitis C and mental impairments. (T. 81).  Plaintiff has a long history of substance and alcohol abuse, and depression. (T. 14, 375).  Plaintiff has been treated for her substance and alcohol abuse at many medical facilities, both in New York and New Jersey. (T. 106-109, 135-149, 157-162, 169-181, 183-184, 189-236).  Plaintiff's medical records are replete with multiple references to her abuse of both prescription medication and illegal drugs. (T. 106, 137, 140, 157, 239, 300).  In part, as a result of plaintiff's severe substance abuse problems and treatment in many different facilities, she has no work record.

At the hearing during November of 2003 (T. 453-96), plaintiff stated that she had pain in both legs, had severe mood swings, and suffered from chronic fatigue which prevented her from engaging in certain household chores and most outside activities.  Plaintiff also stated that she was fearful of people and had limited educational skills.

## DISCUSSION

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; ... . Assuming the claimant does not have listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [she] has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir. 1984).

1. **<u>Scope of Review</u>**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)(citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the

ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

## 2.     **Medical Evidence**

The Administrative Record in this case is replete with records of treatment of plaintiff's longstanding substance abuse problems, including hospitalizations at University Hospital in Newark, New Jersey for heroin and Xanax dependence during May of 2000 (T. 106-109), and a hospitalization later that year at Mt. Carmel Guild Hospital for opioid dependence.  The Discharge Summary from Mt. Carmel Hospital indicates daily drug and alcohol abuse (T. 136) and the use of many other illegal substances. (T. 137).  Notes from that hospitalization indicate that plaintiff had ***not*** been hospitalized for any mental illness. (T. 137).  Later on during November of 2000, plaintiff was treated at St. Michael's Medical Center (T. 157-163) for opioid detoxification, including use of heroin and Xanax, and the hospital records indicate a "long history of substance abuse". (T. 158).

During December of 2000, plaintiff was treated at Benedictine Hospital for a suicide attempt or "gesture."  The Notes from that hospitalization indicate that plaintiff had been addicted to drugs for many years (T. 174) and had been treated for several years by the Columbia County Mental Health Center. (T. 189-235).  The notes from various Social Workers and psychologists at the Columbia County Mental Health Center give the same or very similar diagnoses, and most of the records include statements about opioid dependence, alcohol dependence, and usually include references to problems with sedatives and hypnotic drugs. (T. 196, 202, 208, 299, 305, 308, 309-10, 321, 323, 329-33).

**3.    <u>Alcohol and Substance Abuse</u>**

In 1996, Congress passed a law that, in part, amended the Social Security Act, providing for denial of disability benefits to "Drug Addicts and Alcoholics." Pub. L. No. 104-121, 110 Stat. 847 (1996). The law is codified at 42 U.S.C. §§ 423(d)(2)(C) (Disability Insurance Benefits), 1382c(a)(3)(J)(Supplemental Security Income). The statute provides that if alcohol or drug addiction is a "contributing factor material to the Commissioner's decision that the individual is disabled", the individual will ***not be considered disabled***.

The regulations require that a determination must be made as to whether the plaintiff would still be found disabled if plaintiff stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). If the remaining limitations, considered independently of any drug or alcohol abuse would not be disabling, then drug addition and/or alcoholism will be considered to be a "contributing factor" under the law, and the plaintiff will be found not disabled. *Id.* §§ 404.1535(b)(2), 416.935(b)(2). *See Birdsall v. Barnhart*, 03-CV-448, 2004 U.S. Dist. LEXIS 6589, *23 (D. Conn. March 12, 2004). The burden is on plaintiff to prove that substance or alcohol abuse is not a contributing factor material to the disability determination. *Id.* at *23-24 (citing *Doughty v. Apfel*, 245 F.3d 1274 (2d Cir. 2001).

In this case, the ALJ specifically found, after reviewing the evidence, that plaintiff's impairments were solely drug and alcohol related and were therefore, material to a finding of disability. (T. 21). Therefore the ALJ found under Public Law 104-21, plaintiff was not disabled. The ALJ also found that despite plaintiff's

7

substance abuse, the testimony of a Vocational Expert (VE) at the hearing supported the conclusion that plaintiff was not disabled. (T. 21).

**4.     Substantial Evidence**

Plaintiff's brief is sparse and simply contains a numerical list of alleged errors by the ALJ, rendering his decision unsupported by substantial evidence.  Plaintiff then attaches a copy of the letter-brief that plaintiff's attorney sent to the Appeals Council. This letter does contain some legal argument, indicating the basis for plaintiff's request to reverse and remand the ALJ's decision.

### A. Plaintiff's Letter Brief of August 31, 2004

Plaintiff first argues that her attorney's letter of August 31, 2004, (attached to her current brief), was not considered by the Appeals Council. (Brief, p. 4).  That is flatly incorrect since the Appeals Council"s Notice of October 25, 2004 clearly states at the bottom of page 3 that the Appeals Council "considered the reasons ... as presented in your representative's letter dated August 31, 2004."  (T. 3).  Although this letter brief is not in the record, the Appeals Council *did consider* the arguments in that letter and rejected them.

### B. Bipolar Disorder

Plaintiff's second assignment of error was that the ALJ missed the diagnosis of bipolar disorder and missed the fact that an August 8, 2003 office note was signed by Dr. Gershberg, who is a treating psychiatrist. (Brief, p. 4).  Plaintiff argues in the brief that the ALJ should have "clarified" this diagnosis or at least have considered it "new evidence".  Plaintiff's brief cites no case law or legal argument in support of this claim.  However, based upon the cases in counsel's letter to the Appeals Council, it

appears that counsel is arguing that the ALJ failed to properly develop the record and failed to give a treating physician's report the proper weight. Plaintiff's counsel also states, in the alternative, that the ALJ should have considered this diagnosis "new evidence."

It is true that an ALJ has the duty to develop the record, regardless of whether the plaintiff is represented by counsel. *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)(citations omitted). The Second Circuit in *Shaw* also stated that due to the greater weight afforded to a treating physician's opinion, the ALJ has a duty in certain circumstances, to seek additional information from the treating physician. *Id.* at 134.

In support of his claim that the ALJ "missed" the diagnosis of bipolar disorder, counsel in this case cites the Office Notes of Dr. Jack Gershberg compiled during an examination of the plaintiff by Dr. Gershberg on August 8, 2003. (T. 387-88). Plaintiff claims that Dr. Gershberg *diagnosed* bipolar disorder. However, the very beginning of Dr. Gershberg's Notes state that "*I* was Dx'd [diagnosed] with Bipolar." (T. 387)(emphasis added). It is obvious that this ***is a statement by the plaintiff to Dr. Gershberg and is not a diagnosis by Dr. Gershberg.*** In fact, there is a question mark before this statement, and a reading of the entire report shows that bipolar disorder does *not appear* in Dr. Gershberg's diagnoses. (T. 388, 449-50). In the "summary" section of this report, the doctor states that plaintiff was examined previously when she was incarcerated in August of 2002, and the diagnosis was "Impulse Control D/O [and] Intermittent Explosive D/O." *Id.*

Although the record in this case contains many medical statements about plaintiff's physical and mental condition by psychologists, Social Workers, and a

9

psychiatrist, ***there is no statement anywhere in any medical records that plaintiff was diagnosed with Bipolar Disorder***. The argument that the ALJ "missed" a treating physician's diagnosis of Bipolar Disorder is ***completely unsupported*** by any medical evidence in the record. The handwritten Notes from Dr. Gershberg simply indicate that the *plaintiff* made that statement, and there is no proof in the record that plaintiff had a diagnosis of Bipolar Disorder or was ever treated for that condition.[1] Counsel cites to no other report in the record in which plaintiff was "diagnosed" with bipolar disorder. Since the ALJ did not "miss" a diagnosis, he did ***not*** fail to develop the record by re-contacting Dr. Gershberg for a "clarification." Finally, without a lengthy discussion of the standard for "new evidence", since the ALJ did not miss the diagnosis, there was no "new" evidence to consider.

### C. Dr. Gershberg's Assessment of Plaintiff's Mental Ability to Work

The case law as well as the regulations provide that although a treating physician's opinion is not binding on the Commissioner, the opinion must be given controlling weight when it is well supported by medical findings and ***not inconsistent with other substantial evidence***. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 416.927(d). If the treating physician's opinion is contradicted by other substantial evidence, the ALJ is not required to give the opinion controlling weight. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must, however, properly analyze the reasons that the report is rejected. *Id.*

---

[1] The court notes that during plaintiff's admission to Mt. Carmel Guild Behavioral Health Care Center she was diagnosed with "***Substance induced mood disorder.***" (T. 143). This was not a diagnosis of bipolar disorder, and in any event, it was clearly related to her substance abuse.

Plaintiff's counsel argues that the ALJ "totally" missed the fact that the Assessment of Plaintiff's Mental Ability to Work was signed by a psychiatrist, Dr. Gershberg. (Plaintiff's Brief at 4). Counsel is referring to the ALJ's statement in his decision that he "gave careful consideration to the opinion of Dan Michaud, *ACSW* as outlined in the record exhibits. (T. 18). The ALJ did not refer to this document as the "treating psychiatrist's opinion." This form is an assessment of the plaintiff's mental Residual Functional Capacity (RFC), and contains very serious limitations on plaintiff's abilities. Counsel's point is that since the information on the form constitutes the opinion of the treating psychiatrist, it should be given great weight, but that since the ALJ stated that the form was completed by a social worker, the ALJ clearly did not give the form the weight that it deserved.

The court notes that the record contains two copies of a form entitled "Medical Source Statement of Ability to do Work-Related Activities (Mental)(Mental RFC)". (T. 385, 386, 449, 450). These forms are identical and one is simply a duplicate of the other. Both of these copies are signed by a Social Worker, Dan Michaud *and* Dr. Jack Gershberg. (T. 386, 450). The Social Worker's signature is dated June 24, 2003 and Dr. Gershberg's signature on the same form is dated August 15, 2003. The record also contains a copy of this form with ***only the signature of the psychiatric Social Worker dated June 24, 2003.*** (T. 399). In fact, it appears that Dr. Gershberg's signature was added after the first time that Mr. Michaud sent the records to plaintiff's counsel. (T. 397-99). Page 397 is a letter from Dan Michaud to plaintiff's counsel, attaching the recent Columbia County Mental Health Center records. The document that follows that letter is the Mental RFC form signed only by Mr. Michaud. (T. 398-99). In fact,

11

this copy of the document does not even contain a line for a second signature. That second line and Dr. Gershberg's signature appear on the other copies of this form. It appears that the form was "co-signed" by Dr. Gershberg on August 15, 2003. *See* T. 384 (letter from plaintiff's counsel's paralegal to Social Security). While the court does not dispute that Dr. Gershberg reviewed Mr. Michaud's Mental RFC evaluation and approved it, plaintiff's counsel appears to argue that Dr. Gershberg ***completed that form***, when that is clearly not the case.

Plaintiff argues that the restrictions placed by Dr. Gershberg and the psychiatric Social Worker would preclude plaintiff from the ability to engage in any type of work activity since they classified her as having extreme impairments in five categories of interacting with the public, co-workers, and supervisors, and two categories of responding appropriately to work pressures and changes in work settings. (T. 386, 399, 450). Plaintiff argues that since Dr. Gershberg was a treating psychiatrist, this opinion deserved great weight.

While it is true that the ALJ did not mention that Dr. Gershberg ultimately signed this form, approving it, there are several problems with plaintiff's argument, even assuming that Dr. Gershberg had been the original author. The issue in this case is not whether plaintiff has severe limitations, because it is clear that she does. Instead, the issue is whether her drug and alcohol abuse is a "contributing factor" to those limitations. The Mental RFC in question states that plaintiff's limitations are not dependent on her substance abuse because she was observed in jail when the substance abuse was not an issue. (T. 399, 450). The ALJ noted, however, that this

statement was not accurate because the plaintiff admitted that she continued to use drugs while in jail. (T. 18).

Plaintiff's counsel argues that the ALJ was "partially correct", and that the records to which the ALJ referred to support his statement that plaintiff used drugs in jail were dated in December of 2000, but Dr. Gershberg observed plaintiff during a jail stay in 2002. Thus, according to plaintiff, the records to which the ALJ referred would not necessarily support the ALJ's decision.

The main problem with plaintiff's argument is that ***extensive records*** of Columbia County Mental Health Center ***contradict*** the form completed by the Social Worker and the psychiatrist. The records of Columbia County Mental Health show that plaintiff had an extensive history of drug abuse from her teens, and that her depression was related to drug addiction and other matters. (T. 349). The records of the other institutions confirm her longstanding history of substance abuse almost without any period free from that drug abuse. In a visit to the Columbia County Mental Health Center during December of 2000, a psychiatric Social Worker consulted with Dr. Gershberg and other professionals about the appropriate treatment for plaintiff and concluded that plaintiff would be advised that she could not be scheduled to see a psychiatrist until she received treatment for her chemical dependency. (T. 401).

On one occasion, plaintiff was requesting an appointment with a psychiatrist to receive a prescription for "her medication" which appears to be Xanax. The notes indicate that the Mental Health Center refused to prescribe Benzodiazepines for the plaintiff, and plaintiff stated that she would attempt to get those medications through a

visit to an emergency room. (T. 402). Several of plaintiff's visits to Columbia County Mental Health Center were for the purpose of obtaining more of the medications she was abusing. (T. 400, 407, 408, 414).

The records from Columbia County Mental Health Center also indicate that plaintiff was able to get prescription medications and abused them *while she was incarcerated*. (T. 404). The Note from psychologist J C O'Leary on April 25, 2002 states that psychologist O'Leary cautioned "... the psychiatrist reminding him that she [plaintiff] was successful in getting RX medication to get high in jail." (T. 404). A representative of Valatie Family Care told the personnel at Columbia County Mental Health Center during June of 2002 that plaintiff was a "drug focused person". (T. 407). The Valatie Family Care records also state that plaintiff was refused a prescription for Xanax on November 11, 2002 because of her abuse of that medication. (T. 335).

It appears therefore that the Medical Assessment signed by the psychiatric Social Worker on June 24, 2003 and by Dr. Gershberg on August 15, 2003 is in error and inconsistent with the records of Columbia County Mental Health Center where the psychiatric Social Worker and psychiatrist are employed. The ALJ pointed out these inconsistencies, and his conclusions in his decision on pages 18 and 19 of the record are fully supported by substantial evidence in the record.

Although plaintiff argues that the incarceration during which plaintiff abused prescription medications was at a different time from the incarceration referred to in the Medical Source Statement about plaintiff's mental function (T. 385, 386, 449-50) (Brief p. 5), the record is *not* clear on this issue. Plaintiff argues that the Columbia

14

County Mental Health records refer to drug use "... *prior* to 12/26/00". This is *not* correct since the records also contain a statement from John H. Courtney, M.S.W.*, dated April 25, 2002,* stating that plaintiff "... was successful in getting RX medication to get high in jail." (T. 404).

Another Note dated *June 18, 2002* from Glenn Balli, A.A.S., of Columbia County Mental Health, refers to a jail visit on June 18, 2002 where plaintiff was again seeking to get the drug Xanax. (T. 408-09). Two days later, on June 20, 2002, Social Worker Dan Michaud visited plaintiff at the Columbia County Jail and was met with hostile behavior. Plaintiff stated " ... she needs her Xanax". (T. 414). Mr. Michaud recommended that "... the jail get a drug screen". (T. 414). This clearly implies that he believed that plaintiff might have had drugs in her system during the June 20, *2002* incarceration. Plaintiff's arguments (Brief, p. 5) are *not* supported by the record.

A review of the entire record shows that plaintiff has almost never been free from substance abuse and/or alcohol abuse from her teenage years to the time that she applied for SSI benefits. The records from all of the institutions show that she has been abusing many separate prescription and illegal substances for many years as stated in the ALJ's decision on pages 15 of the record. The court notes that on August 2, 2002, Social Worker J. Courtney noted that plaintiff's prognosis was "poor with [sic] out drug treatment." (T. 351). It appears from that notation that he believed that plaintiff's substance abuse was preventing her improvement. Another note from the same report states that the "focus of treatment" was "Depression *related to drug addiction* and loss of her children." (T. 349).

15

This is the same period of time that she was examined by Dr. Gershberg. He states in his summary of August 8, 2003, that plaintiff was previously examined and evaluated on *August 9, 2002.* (T. 452). It therefore, appears that there are conflicts in the records from the same facility. On August 2, 2002 a social worker stated that plaintiff's depression was related to her drug addiction, and on June 23, 2003 a different social worker from the same facility states that plaintiff's impairments are not related to plaintiff's substance abuse because she was evaluated in August of 2002 when she was incarcerated, and drug abuse was "not an issue."

Conflicts in the evidence are for the ALJ to resolve. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). Plaintiff has the burden of proving that she is unable to perform substantial gainful activity because of impairments ***unrelated*** to her drug abuse, and the ALJ's conclusion that her alcohol and drug abuse is a "contributing factor" to her disability is supported by substantial evidence. The record fully supports the ALJ's conclusion that plaintiff's substance abuse was material to a finding of disability.

**D.  Vocational Expert (VE)**

The court notes that the ALJ would only have been required to find that plaintiff's substance abuse was material to a finding of disability in order to deny benefits, however, in this case, the ALJ continued the analysis to determine whether despite the substance abuse, plaintiff would have been able to perform jobs existing in the national economy. Because plaintiff's impairments were generally non-

exertional,[2] the ALJ called a vocational expert to testify at the hearing regarding work that plaintiff could perform.

Generally if a plaintiff's non-exertional impairments "significantly limit the range of work" permitted by the plaintiff's exertional limitations, then the ALJ may not use the Medical-Vocational Guidelines exclusively to determine whether plaintiff is disabled. *Bapp v. Bowen*, 802 F.2d 601, 606 (2d Cir. 1986). If the plaintiff's range of work is significantly limited by her non-exertional impairments, then the ALJ must present the testimony of a VE or other similar evidence regarding the availability of other work in the national economy that plaintiff can perform. *Id.* A VE may provide testimony regarding the existence of jobs in the national economy and whether a particular claimant may be able to perform any of those jobs given his or her functional limitations. *See Rautio v. Bowen*, 862 F.2d 176, 180 (8th Cir. 1988); *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983).

In this case, plaintiff's impairments are almost all non-exertional, and the ALJ called a vocational expert to evaluate plaintiff's ability to do other work even though he was not required to do so based on his finding regarding the substance abuse. However, the ALJ presented a hypothetical question to the VE, and that hypothetical question was consistent with the evidence in the record about plaintiff's education and physical and mental limitations. The VE testified that there are several jobs that plaintiff could perform with the impairment stated in the hypothetical. (T. 488-489). Based on the VE's testimony, the ALJ concluded that plaintiff would also not have

---

[2] There is no claim that the ALJ was incorrect in his determination of plaintiff's *physical* capacities. The only issue in this case is the effect of plaintiff's substance abuse on her abilities.

17

been disabled despite her substance abuse, and that conclusion is supported by substantial evidence in the record.

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED**, that the decision of the Commissioner be **AFFIRMED** and the Complaint (Dkt. No. 1) be **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: April 10, 2006

                                            Hon. Gustave J. DiBianco
                                            U.S. Magistrate Judge